THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MORELAND FAMILY,<br><br>               Plaintiffs,<br>    v.<br><br>MARY M. KNIGHT SCHOOL DISTRICT,<br><br>               Defendant. | CASE NO. C23-0205-JCC<br><br>ORDER |

This matter comes before the Court on Plaintiff's complaint (Dkt. No. 1-1) seeking review of an Administrate Law Judge's ("ALJ") order made pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C § 1400 *et seq*. The ALJ found that Defendant did not violate the IDEA and did not deny M.M. a free appropriate public education ("FAPE"). (*See* Dkt. No. 18-5 at 574–75.) Having thoroughly considered the briefing and the relevant record, the Court GRANTS summary judgment to Defendant and AFFIRMS the ALJ's order.

I.    **BACKGROUND**

Plaintiffs are the guardians of M.M., a minor student with a hearing disability and who qualifies for special education services under the IDEA. (*See* Dkt. No. 18-4 at 83.) Although Plaintiffs are residents of the Seattle Public School District, they elected to enroll M.M. at Washington Connections Academy ("WACA"), an asynchronous learning program with whom

1   Defendant Mary M. Knight School District contracts. (*See* Dkt. No 18-5 at 74.)

2   Plaintiffs argue Defendant denied M.M. a FAPE by allegedly (a) failing to provide his guardian with requested records prior to the individualized education program ("IEP") meeting; (b) failing to provide M.M. with specially designed instruction ("SDI") by certified special education teachers, and failing to ensure that special education and related services were provided by appropriately qualified staff; (c) providing an IEP for the 2021–2022 school year that was not reasonably calculated to enable M.M. to make appropriate progress in light of his unique circumstances because it did not contain appropriate and sufficient SDI, related services, and accommodations; (d) failing to implement M.M.'s IEP during the 2021–2022 school year; and (e) failing to have all mandatory IEP team members present for IEP team meetings in January and February 2022. (*See* Dkt. No. 1-1 at 4.)[1]

According to the administrative record, M.M. was eligible for special education services due to a diagnosed hearing disability. (*See* Dkt. No. 18-6 at 8.) This included math, reading, and writing services. (*Id.*) He was also eligible for Speech Language Pathology ("SLP") and audiology services. (*Id.*) But the family preferred to utilize private providers. (*Id.*) M.M.'s IEP was evaluated again in October 2020 and based on this, he was to receive 60 minutes per week of SDI in math, reading, and writing, whereas all other time would be in a general education setting. (*See* Dkt. No. 18-5 at 75.) The IEP also provided for closed captioning as an accommodation and allowed M.M. to skip nonessential lessons as needed. (*Id.*) The District reported M.M. had made sufficient progress, receiving all A's and B's during the 2020–2021 school year. (*Id.* at 77.)

As the 2021–2022 school year began, the District recognized it was obligated to conduct M.M.'s triennial reevaluation by November 2021. (*Id.* at 79.) The District sought to perform an academic evaluation using standardized assessments and provided Plaintiffs with a consent form in September 2021. (*Id.*) Plaintiffs signed the consent form in September; however, they had

---

[1] The ALJ concluded that no IEP team meeting took place in February 2022.

ORDER
C23-0205-JCC
PAGE - 2

1  multiple questions about the process and did not schedule the reevaluation with the contracted
2  school psychologist. (*Id.*) The parties communicated back-and-forth between September 2021
3  and January 2022, but the District did not hold any meetings or perform a reevaluation. (*Id.* at
4  81.)
5       To accommodate Plaintiffs, the District proposed completing the triennial reevaluation in
6  January 2022, using data from 2015 and 2018, along with an informal review of M.M.'s current
7  academic performance, in lieu of formal assessments. (*Id.*) It also proposed continuing M.M.'s
8  October 2020 IEP until the new assessment was completed. (*Id.*) Plaintiffs requested M.M.'s
9  education and "financial" records from the District in October 2021. (*See* Dkt. No. 18-1 at 135.)
10 In December 2021, Plaintiffs voided their reevaluation consent and filed a due process hearing
11 request. (*See* Dkt. No. 18-5 at 81.) The District proposed a meeting in January 2022 to conduct
12 the combined reevaluation and IEP meeting, and to answer any questions from Plaintiffs.
13      At the meeting, Plaintiffs objected to using 2015 reports from a previous school
14 psychologist, informed the District they preferred to use a completed independent education
15 evaluation instead, and agreed to release M.M.'s private SLP and audiology therapy records.
16 (*Id.*) Additionally, Plaintiffs did not report they were missing any records, reports, or
17 documentation needed for the meeting. (*Id.*) The District deferred to Plaintiffs and agreed to use
18 their private evaluation and not incorporate the 2015 report into the reevaluation. (*Id.*) Following
19 the meeting, the District sent Plaintiffs meeting minutes and encouraged them to offer
20 corrections. (*Id.* at 83.) Plaintiffs did not suggest any corrections. (*Id.*) The District did not hold
21 any further IEP or reevaluation meetings. (*Id.*)
22      Plaintiffs filed their initial special education due process hearing request with the Office
23 of Administrative Hearings ("OAH") on December 30, 2021. (*See* Dkt. No. 18-3 at 2-5.) They
24 sought compensatory relief in the amount of 175 hours of on-on-one tutoring provided by Think
25 Academy and other equitable remedies, as appropriate. (*See* Dkt. No. 18-5 at 39.) The hearing
26 took place in September 2022, where M.M.'s guardian, grandmother, and WACA staff testified.

(*Id.* at 72.) The ALJ found that Plaintiffs did not carry their burden on the issues presented and concluded there was no basis for relief. (*Id.* at 98.) Plaintiffs now appeal that decision. (*See generally* Dkt. No. 1-1.)

## II.     DISCUSSION

### A.     Standard of Review

When a party challenges an administrative decision under the IDEA, the Court "shall receive the records of the administrative proceedings;" "shall hear additional evidence at the request of a party;" and, "basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). The "burden of persuasion rests with the party challenging the ALJ's decision." *L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 910 (9th Cir. 2009); *see Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 57–58 (2005).[2] In IDEA administrative appeals, the Court does not employ the typical highly deferential standard of review of agency decisions. *See JG v. Douglas Cnty. Sch. Dist.*, 552 F.3d 786, 793 (9th Cir. 2008). Instead, the Court gives "due weight" to the administrative proceedings and accords particular deference to decisions that are thorough, careful, impartial, and sensitive to the complexities present. *See id.*; *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1472, 1476 (9th Cir. 1993). The Court must consider the findings carefully and address the hearing officer's resolution of each material issue. *Cnty. of San Diego v. Cal. Special Educ. Hearing Off.*, 93 F.3d 1458, 1466 (9th Cir. 1996). Finally, when considering *pro se* claims such as this one, the Ninth Circuit has held that such individuals must plead plausible claims, while also being "held to a less stringent standard[]" than lawyers. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

### B.     Analysis

Under the IDEA, states have a substantive obligation to provide a FAPE to children with disabilities. *See* 20 U.S.C. § 1412(a)(1); *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist.*

---

[2] This is contrary to Plaintiffs' argument that the burden of persuasion should rest with the District. (*See* Dkt. No. 23 at 30.)

*RE-1*, 580 U.S. 386, 390 (2017). To access a FAPE, an eligible student receives an IEP. *See* 20 U.S.C. §§ 1401(9), 1414(d). An IEP includes a statement of the student's academic achievement, measurable goals, and the services that will enable the student to make progress. *Id.* § 1414(d); *Endrew F.*, 580 U.S. at 399–400. IEP eligibility is determined through evaluations initiated either by the parent or an educational agency such as the school district. *See* 20 U.S.C. § 1414(a). When reviewing IEP's, the question is "whether the IEP is *reasonable*, not whether the court regards it as ideal." *Endrew F.*, 580 U.S. at 387. There is no statutory requirement for "perfect adherence," only that education services are "in conformity" with the IEP. *Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 821 (9th Cir. 2007) (emphasis omitted).

The IDEA also contains procedural requirements related to IEP evaluations, eligibility determinations, and due process. *See* 20 U.S.C. §§ 1414–15. Procedural violations amount to FAPE violations when (a) the child's right to a FAPE has been impeded, (b) when the "parents' opportunity to participate in the decision making process" has been "significantly impeded," and/or (c) when the child is actually deprived of educational benefits. *Id.* § 1415(f)(3)(E)(ii).

1. <u>Access to Requested Records Prior to the January 2022 IEP Meeting</u>

Plaintiffs argue that Defendant failed to provide them with education records prior to an IEP and reevaluation meeting. (Dkt. No. 1-1 at 4.) Specifically, Plaintiffs argue they did not receive the "financial-breakdown piece."(Dkt. No. 18-1 at 134–36.)

The ALJ concluded that 'financial records" do not fall within the scope of the Family Education Rights and Privacy Act's ("FERPA") educational records definition, and that the District produced all required records prior to the meeting. (*See* Dkt. No. 18-5 at 85–86.) The Court agrees. Although parents have the right to access their student's education records, *see* WAC 392-172A-05190, FERPA defines "education records" as records that are (1) directly related to the student and (2) maintained by an educational agency or institution. *See* 20 U.S.C. § 1232(g). Plaintiffs did not challenge the ALJ's conclusion in their briefing. (*See generally* Dkt.

Nos. 20, 22.)[3]

Therefore, the Court finds that Plaintiffs have not met their burden in challenging this conclusion and affirms the ALJ's decision on this issue.

### 2. Certified Special Education Teachers and Appropriately Qualified Staff

Plaintiffs argue that Defendant failed to provide M.M. with SDI by certified special education providers and appropriately qualified staff. (*See* Dkt. No. 1-1 at 4.) Specifically, they assert that WACA "inflated their [teachers' skills] to avoid addressing their lack of basic skills such as[] speaking with the student," (*see* Dkt. No. 20 at 4), and that staff were not qualified because they did not provide certified interpreting services, (*see* Dkt. No. 22 at 9).[4]

Under IDEA regulations, school districts are required to employ appropriately credentialed special education teachers. *See* WAC § 392-172A-02090(a)–(b); 34 C.F.R. § 300.156. Here, the ALJ concluded the District met its IDEA requirements to provide M.M. with qualified staff. (Dkt. No. 18-5 at 98.) Each teacher received at least a bachelor's degree, some had master's degrees, and all had experience teaching in both general and special education environments and were certified to teach special education in Washington. (*Id.*) Like the ALJ, the Court acknowledges Plaintiffs' aspirational teaching goals for M.M. However, the Court agrees that Plaintiffs did not meet their burden to establish that staff were not appropriately qualified under the IDEA.

### 3. Reasonably Calculated IEP in the 2021–2022 School Year

Plaintiffs argue that the District did not provide a FAPE by failing to develop a

---

[3] Plaintiffs appear to request a financial breakdown of how WACA spends funds allocated to special education and make larger complaints against educational funding. (*See* Dkt. No. 20 at 11, 21, 23.)

[4] Plaintiffs further claim WACA failed to adopt a "growth mindset theory" and removed lessons on "Afro American culture." (Dkt. No. 20 at 18.)

reasonable and appropriate IEP for the 2021–2022 school year. (*See* Dkt. No. 1-1 at 4.)[5] This, according to Plaintiffs, is because (a) the IEP relied on a 2015 psychological test conducted by Dr. Corey Clark, whose services they allegedly rejected, (*see* Dkt. No. 20 at 10)[6]; (b) the IEP allowed M.M. to skip certain "unnecessary" lessons, (*id.* at 18.); (c) Defendants removed educational lessons, (*id.* at 18); and (d) Defendants failed to provide legally required Signed Exact English ("SEE") or Conceptual Accurate Sign English ("CASE") interpreters as an accommodation, (*id.* at 23). None of Plaintiffs' claims provide a basis for reversal of the ALJ's decision. The ALJ noted that Plaintiffs did not consent or participate in the annual IEP development process in October 2021, therefore the District continued to implement M.M.'s October 2020 IEP through the 2021–2022 school year. (*See* Dkt. No. 18-5 at 96.) Plaintiffs challenge the October 2020 IEP.

First, as the ALJ concluded, M.M.'s October 2020 IEP was based on his 2018 reevaluation, his 2019 IEP, and other data and reports from teachers and Plaintiffs—not Dr. Clark's 2015 evaluation. (*Id.* at 93.) Second, Plaintiffs fail to demonstrate how the accommodation allowing M.M. to skip certain classes was inappropriate—particularly where it was intended to place M.M. in the same position as his general education peers. (*Id.*) Third and finally, the ALJ was correct in concluding that Plaintiffs did not provide evidence that they requested a SEE or CASE interpreter during the development of M.M.'s October 2020 IEP, nor that such accommodations were necessary. (*Id.*)[7]

---

[5] Plaintiffs appear to take issue with WACA and its overall curriculum, but do not identify how the learning goals provided in M.M.'s IEP were unreasonable or inappropriate. (*See* Dkt. No. 18-1 at 144–146.)

[6] Plaintiffs do not cite to evidence confirming a formal rejection of Dr. Clark's services. They testified that they do not remember consenting to an evaluation in 2015 but did not articulate why the evaluation was inappropriate and did not introduce additional evaluation records they believed would better inform the school. (*See* Dkt. No. 18-1 at 60–63, 149–150; 18-5 at 97.)

[7] The Court further notes that Plaintiffs failed to raise their claim regarding access to a CASE interpreter during their due process hearing. (*See generally* Dkt. No 18-1.)

Accordingly, the Court affirms the ALJ's conclusion that Plaintiffs did not meet their burden of demonstrating that the October 2020 IEP was inappropriate.

### 4. Implementation of M.M.'s IEP during the 2021–2022 School Year

Plaintiffs argue that M.M.'s October 2020 IEP was not implemented properly because he could not access his captioning accommodation during the 2021–2022 school year. (*See* Dkt. No. 1 at 4.) They state that the closed captioning only worked during certain classes. (*See* Dkt. No. 20. at 13.)[8] On review, Plaintiffs argue that they presented evidence of equipment breakdowns and assert they had to provide their own closed captioning services for multiple classes. (*See* Dkt. No. 22 at 6.) M.M.'s guardian also argues that they provided M.M. with 45 to 50 hours per week of closed captioning services during November 2021. (*Id.* at 14).[9]

After an IEP is developed, the District must implement it in conformity with its provisions. *See* WAC 392-172A-03105. But there is no statutory requirement for "perfect adherence." *Van Duyn*, 502 F.3d at 821 (emphasis omitted). And while material failures in implementing an IEP violate the IDEA, they must be more than minor discrepancies. *Id.* Said another way, IDEA violations amount to a FAPE denial when they actually and/or materially impede a student's right to a FAPE or deprive them of education benefits. WAC 392-172A-05105; 34 C.F.R. § 300.513.

It is not disputed that M.M.'s IEP required Defendants to provide closed captioning as a daily accommodation. (*See* Dkt. No. 18-6 at 14.) The District conceded that for an "unknown" period of time in September 2021, the closed captioning was unavailable. (Dkt. No. 18-5 at 96.) And the ALJ concluded that the District "materially failed" to implement M.M.'s closed captioned accommodation. (*Id.*) Nevertheless, the ALJ noted Plaintiffs did not provide testimony that M.M. could not otherwise participate in general education, nor that he was deprived of any

---

[8] Plaintiffs also raise arguments about the lack of access to closed captioning services prior to the 2021–2022 school year. (*See generally* Dkt. Nos. 20, 22.) Because this falls outside of the relevant time period, the Court will not address it.

[9] Plaintiffs do not provide evidence to support this assertion.

1  education benefit given his access to his personal closed captioning device. (*Id.*)

2  Thus, while the District's failure to provided closed captioning amounts to a material
3  violation of its duty to implement the IEP, the Court cannot conclude that M.M. was denied a
4  FAPE or educational benefits.

5       5.  <u>IEP Team Attendance</u>

6  Plaintiffs also argue that the District failed to ensure all mandatory IEP members were
7  present for the January 2022 reevaluation and IEP team meeting. (*See* Dkt. No. 1-1 at 4.) M.M.
8  has multiple general and special education teachers, in addition to private providers that
9  Plaintiffs argued should have been at the meeting. (*See* Dkt. No. 18-1 at 56–58, 131–32.)
10 Plaintiffs also assert that Carrie Bishop, the school psychologist, and Robin Raye, the speech
11 language pathologist, should not have attended. (*See id.*)

12 Under WAC 392-172A-03095, IEP teams must include a student's parents, a general
13 education teacher (if participating in the general education environment), a special education
14 teacher, a school representative, and the student, if appropriate. One of the district members
15 should be able to interpret instructional implications of evaluation results. *Id.* Reevaluations must
16 be conducted by a "group of qualified individuals." WAC 392-172A-03020. The IEP team and
17 other qualified professionals must be present at reevaluations meetings to make determinations.
18 WAC-392-172A-03025.

19 The ALJ concluded that the personnel present at the January 2022 IEP meeting met these
20 requirements. (*See* Dkt. No 18-5 at 564.) The Court agrees. Based on January meeting notes, (*see*
21 Dkt. No. 18-6 at 31), it appears that all required individuals attended the meeting.

22 Accordingly, the Court affirms the ALJ's conclusion on this issue.

23      6.  <u>Entitlement to Requested Remedies</u>

24 Because the Court finds that Plaintiffs failed to prove that the District denied M.M. a
25 FAPE, it also must find they are not entitled to their requested relief. *See* 20 U.S.C.
26 § 1412(a)(10)(C)(ii) (parents are entitled to reimbursement for private tuition where a district

"had not made a free appropriate public education available to the child in a timely manner prior to that enrollment"); *Anchorage Sch. Dist. v. M.P.*, 689 F.3d 1047, 1058 (9th Cir. 2012) ("Parents have an equitable right to reimbursement for the cost of providing an appropriate education when a school district has failed to offer a child a FAPE."). Accordingly, the ALJ's decision to deny all requested remedies is affirmed.

### III.  CONCLUSION

For the foregoing reasons, the Court GRANTS summary judgment to Defendants and AFFIRMS the ALJ's order.

DATED this 24th day of July 2024.

John C. Coughenour
UNITED STATES DISTRICT JUDGE